OPINION,
That the defendent, in prosecution of a design to gain and secure to himself a profit illegal and unrighteous, was guilty of fraud, both in tearing the memorandum from one of the bills penal, and in obstructing the plaintiff in the procurement of Henry Garretts bond, mentioned in the memorandum; (a) and that the referees, in deciding the difference submitted to them, acted in such a manner that the award made by them ought to be set aside; and
Decreed a perpetual injunction to the whole judgement, awarding to the plaintiff the costs in the action wherein the judgement was given, with the costs of the suit in equity.
The court of appeals* before whom the cause was brought *by the defend-ent, 17th day of October, 1792, pronounced the following
*154 OPINION and DECREE,
‘That there is error in the said decree, in making the injunction therein stated perpetual, as to the whole judgment for fifty five pounds sixteen shillings and six pence, and the interest, whereas three pounds twelve shillings and eight pence, part thereof, appears by the record to have been due to the appellant, on the 3 day of november, 1785, for the balance of the bond for 100 pounds and the money paid by the appellant to Garth in part of his bond to Garret and interest to that time, over and above the 41 pounds, for which judgement was on that day confessed, and made no part of the 50 pounds and interest in dispute between the parties: that as to the said 50 pounds and interest there is no error in the said decree, the court being of opinion that the said 50 pounds, was to be considered as a penalty for further inforcing the payment of 100 pounds, or procuring an assignment of the appellants bond to Garret for that sum, against which penalty the appellee was intitled to relief in equity, not only by the general principles of that court, to relieve against penalties on making compensation, but, because in this case, the appellee was prevented in performing one of the alternatives By the interposition of the appellant, and that the said decree is not erroneous as to the costs at law, more money appearing to have been tentiered to the appellant before suits brought than was due to him at that time. Therefore it is decreed and ordered that the said decree be reversed and annulled as to 31. 12s. 8d. part of the judgment for 551. 16s. 6d. with interest from the 3 day of november, 1785, that the injunction obtained by the appellee in the said high court of chancery be dissolved as to so much; that the residue of the said decree be affirmed, and that the appellee pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.
REMARKS.
The court of chancery is confessed to have erred in perpetuating the injunction to the whole judgment, an account was not stated, as it ought to have been, at the hearing, to shew ’that the money due from the plaintiff to the defendent was between three and four pounds more than the 41 pounds, for which the judgement had been confessed.
Upon the main question in the case, namely, whether the ^plaintiff ought to be relieved by a court of equity against the judgment? .the opinion of the court of appeals is stated in these terms, that the said 50 pounds was to be considered as a penalty for further enforcing the payment of 100 pounds, or procuring an assignment of the defendents bond to Garret for that sum,, against which penalty the plaintiff was intitled to relief in equity, not only by the general principles of that court, to relieve against penalties on making compensation, but, because in this case the appel-lee was prevented in performing one of the alternatives by the interposition of the appellant. by which that court is supposed to have considered the case in the same manner as if no award had been made in it: and consequently to have established this position, that a court of equity hath power to relieve against a judgment founded upon an award, if the award appear to be contrary to the principles of equity, and if, as in the present case, the party, in whose favor the award is, had by his interposition prevented the other party from performing something whereby he would have saved a penalty, which he was condemned by the award to pay; and- this notwithstanding the whole matter discussed before the court of equity had been discussed before the arbitrators.
That, in this case, the matters discussed before the court of chancery were discussed before the arbitrators is manifest by the exhibits and testimony, the question controverted between the parties, before both tribunals, being only, whether the defend-eut ought or not to have the fifty pounds penalty?
The act of the arbitrators may be understood therefore in the same sense as if their sentence had been declared in these term: upon the two questions controverted between the parties we are of opinion, 1, that the defendent (that is the plaintiff in the court of chancery) ought not to be relieved against the penalty of fifty pounds, upon making reparation for all damage sustained by his failure to deliver to the plaintiff (that is the defendent in the court of chancery) his bond to Henry Garret, within the time limited, (b) and 2, that the plaintiff is intitled to the fifty pounds penalty, although it was incurred by his act and default, the one, in obtaining a promise from Henry Garret not to part with the bond before a certain time, and the other, in not having released f Henry Garret from the promise before the defendent applied to him for the bond, and therefore we do order and award, that the defendent pay to the plaintiff 551. 16s. *6d. the principal money, including that penalty, found due to him from the defendent, exclusive of the 41 pounds for which judgement hath been confessed, with interest from this time, and costs.
Eet us admit the opinion of the arbitrators to have been erroneous in each question ; hath any court, for that reason only, power to correct their sentence?
The object of these compromissary dis-ceptations is to prevent the expense,' delay, turbulence, and other inconveniences of forensic litigation, the parties intend the determination of the arbitrators to be final, it is so declared in the formula by which the controversy is submitted to their deter- *155 ruination. it was so declared in the submission in this case.
When parties differ in opinion, or pretend to differ in opinion, each thinks, or pretends to think, the opinion of the other wrong, the question then between them is which is right? unable theirselves to decide this question they empower other men to decide it for them, the submission to those men imports an agreement by each party that he will allow to be right that opinion which the arbitrators determine to be right, the judgement of the arbitrators therefore is the judgement of the parties, he whose former opinion the arbitrators condemn is selfcondemned. this is believed to be the genuine ratio which breathes in the trite argument, against rescission of awards, unless for some misbehaviour in the arbitrators, namely, that they are judges chosen by Lhe parties themselves, the choice of parties cannot make the arbitrators abler judges, and if the arbitrators may justly be suspected of inclination to favor the party who chose them, they ought not to be chosen, nor ought their sentence to bind the other party, if he knew not the cause of suspicion, from the sentence of arbitrators no direct appeal lieth to any court, accordingly courts of appeal are appointed to reverse and correct the decisions of courts which form part of the judiciary system, and not to reverse and correct the decisions of judges whom the parties appoint to adjust their disputes.
This doctrine is not peculiar to us, nor to our times.
In Athens, the sentences of their diallac-terioi, who were judges chosen by the parties, differing from our arbitrators only in being sworn, were not reversible, as we learn from the oration of Demosthenes against Midias.
By the roman civil law arbitrorum genera sunt duo, unum ejusmodi, ut sive aequum sit, sive iniquum, parere debeamus: quod observa tur, cum ex promi sso ad arbitrium itum est. Dig. lib. XVII. tit. LVI. I. 76. qualem autem sententiam dicat arbiter, add praetorem non pertinere, Labeo ait, dum-modo dicat quod ipsi videtur. Dig. lib. IV. tit. VIII.
*In manj' cases, however, a refusal to abide by an award is justifiable, and in such cases the magistrate, without whose authority execution of the sentence cannot be enforced, may, not only deny his aid but, abrogate the sentence, for example, 1, where an arbitrator giveth sentence for the party by whom he is bribed, or giveth sentence for one party, moved by good will toward him, or ill will toward his adversary; because the arbitrator is disqualified to perform the office undertaken by him, that is, the office of a judge, who ought to give the sentence which the praecepts of justice dictate, not the sentence which corruption in the one case, or affection or malice in the other cases, may prompt: the sentence of a judge, who thereby earneth sordid wages, or gratifieth a vicious passion, is no less a void act, than it would be, if he were to gain a part of the thing in controversy. 2, where the arbitrator giveth sentence for one party whom he doth hear, without hearing the other party, or giveth sentence without hearing either party, or, after hearing both, without bestowing convenient time in deliberating on the subject of controversy; because he doth not perform the office of a judge, which is to decide after hearing both parties, and to decide after duly deliberating on their allegations, the former being idle, if not rendered momentous by the other. 3, where the award itself is shewn to be such as could not not have been made without corruption, improper influence, (c) or precipitancy in the arbitrator, which hath frequently happened.
The writer of these remarks perhaps hath mistaken the decree of the court of appeals, if not, he asks whether it be not a decree primae impressionis, and whether it doth not constitute every court of equity a court of appeals from awards?

 The court of chancery would not. Cor this reason only, have set aside the award, if the arbitrators had not appeared to have acted improperly: because the sentence of arbitrators, even it to a court it, seem uniust, was theretofore thought to be definitive: but the arbitrators were believed to have misbehaved in refusing to examine witnesses produced by the plaintiff, whose testimony ap-peareth. by their written examinations, to have been pertinent and important, and might and probably would have contradicted or represented differently the facts stated by the defendent before the arbitrators, and supposed to have been admitted by th em. — dSTote in edition of 1795.

[The report of this case in the Court of Appeals Is In 1 Was. 119. See Groves v. Graves. 1 Wash. Note in edition of 185:3.

 In truth no damage was sustained; but the plaintiff derived no less benefit from the defend-' ents procurement of the bond, at the time when it was procured, than he would have derived from a procurement before expiration of the time limited. —Note in edition of 1795.

 See the next case, Beverley v. Ilennolds. — Note in edition of 1795.